UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


United States of America,                                        Case No. 3:16-cr-287

          Plaintiff

    v.                                                             MEMORANDUM OPINION

Derrick L. Johnson,

          Defendant

This matter is before me on Defendant Derrick L. Johnson's motions to suppress his confession and the evidence discovered through the warrantless search of the dwelling in which he was arrested. (Doc. Nos. 10 & 11). I held a suppression hearing on January 26, 2017, and took the matter under advisement. For the reasons stated below, I deny Johnson's motions to suppress.

## SUPPRESSION HEARING

At the time of his arrest, Johnson was on parole through the state of Ohio, under the supervision of Adult Parole Authority Officer Jason Raynor. On May 15, 2015, Johnson signed a form agreeing to abide by five standard conditions of supervision. (Gov't Exh. 4).[1] Johnson individually initialed each condition. (*Id.*). This form also gives notice to parolees of three consequences of their status as parolees, one consequence being that they are "subject to warrantless searches" pursuant to Ohio Revised Code § 2967.131. (*Id.*). Johnson initialed the first two of these three, including the notice regarding warrantless searches. (*Id.*). Johnson then signed the form

---

[1] Johnson objected to the admission of this exhibit based on the government's inability to lay a proper foundation through Officer Raynor's testimony. I admitted this exhibit over Johnson's objection, however, because Officer Raynor, while unable to remember any explanation he gave Johnson pertaining to the form, was able to testify that Johnson initialed and signed the form. As such, I admitted the document for the sole purpose of determining that Johnson received, signed, and initialed the form.

acknowledging his receipt and understanding of these conditions, and Officer Raynor signed as a witness. (*Id.*).

On May 9, 2016, Officer Raynor informed Officer Jamie Murphy, a parole officer and task force member with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, that Johnson was in possession of a firearm, which would be a violation of the terms of his parole. Johnson's mother had contacted Officer Raynor to report that Johnson had threatened to cause bodily harm to her with a gun. Johnson had also texted a picture of a gun to his mother.[2] Officer Murphy contacted Officer Marc Thompson, a parole officer and deputy with the United States Marshals Service ("USMS"), and they decided to arrest Johnson the following day.

Johnson's mother indicated he was staying at his girlfriend Patricia Brazzel's house. So, on May 10, 2016, a USMS task force, including Officers Murphy and Thompson, went to Brazzel's residence to arrest Johnson. Officer Murphy testified that he and two other officers approached the front door, while Officer Thompson and perhaps other officers approached the back door. Brazzel opened the back door upon Officer Thompson's command. It is at this point the witnesses' accounts begin to differ somewhat.

Officer Murphy and Brazzel testified that a task force member came in through the back door and opened the front door for the remaining officers. Officer Thompson said he remained at the back door and did not enter the residence until Johnson was in custody. He also testified that no one else entered through the rear of the apartment. Instead, according to Officer Thompson, he instructed Brazzel to open the front door for the other officers. Regardless of their means of entry, task force members entered Brazzel's home with guns drawn and arrested Johnson. Officers then removed Johnson from the residence.

---

[2] Additionally, Johnson had an unrelated outstanding parole warrant for failing to report to the Adult Parole Authority.

2

Brazzel next testified that two or three officers went back upstairs after Johnson was removed from the residence. Officers Murphy and Thompson corroborated this, testifying that some officers performed a security sweep of the residence to ensure the premises were safe.

Officers Murphy and Thompson testified that after the completion of the security sweep, the two of them spoke with Brazzel and asked if she would consent to a search of her residence for weapons and drugs. Both officers testified that Brazzel responded by telling the officers "no problem" and to "go ahead."

Brazzel, however, testified that when asked if she would consent to a search, she told the officers they were already searching. Brazzel testified that officers were already upstairs and she believed it would have been futile to deny consent at that point.

The witnesses agree that officers found the gun at issue following the above conversation. Officers Murphy and Thompson said they found the gun upstairs under a pile of men's clothes in Brazzel's bedroom closet. Officers showed the gun to Brazzel, who said she had no idea the gun was there.

Officer Murphy then went to the jail and questioned Johnson about the gun. Johnson signed a form acknowledging and waiving his *Miranda* rights. (Gov't Exh. 2). Officer Murphy discussed each of Johnson's rights with him. Johnson appeared to have no difficulty understanding his rights. Officer Murphy made an audio recording of the interview, beginning after Johnson signed the waiver of his rights. Through most of the interview, Johnson denied possessing the gun. (Gov't Ehx. 3 at 6:49-9:40). But he eventually confessed. (*Id.* at 12:24-:44).

**STANDARD**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In areas where an individual has a legitimate privacy interest, the Fourth Amendment prohibits warrantless searches of

3

an individual's home or possessions, subject to only limited exceptions. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

## DISCUSSION

Johnson asks me to suppress the evidence, including the gun, found during the search of Brazzel's apartment, challenging the validity of Brazzel's consent. For purposes of this argument, the government concedes the issue of Johnson's standing to challenge the search. Johnson also moves to suppress his confession, claiming it was involuntarily made. (Doc. No. 10 at 1).

**Search of the Residence**

    **Consent**

Johnson argues that Brazzel "did not freely and voluntarily consent to the search" of her apartment. (Doc. No. 11 at 2). In the alternative, Johnson argues that even if Brazzel did validly consent, she could not do so regarding spaces over which Johnson, as an overnight guest, had control. (Doc. No. 11 at 2).

Brazzel's consent may well have been involuntarily given. The government must prove by a preponderance of the evidence, "through clear and positive testimony, that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (internal quotation marks and citation omitted). It is not enough that one merely respond in a way that conveys "an expression of futility in resistance to authority or acquiesc[ence] in the officers' request." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999).

Brazzel testified that when asked for consent to search her home, she "didn't say no or yes." Instead, Brazzel told Officers Murphy and Thompson "you're already searching." Brazzel said she observed a search already in progress and consequently believed withholding consent would be futile.

It appears the search Brazzel saw in progress just prior to or simultaneous with the request for consent was the security sweep performed just after Johnson's arrest. This sweep was different in purpose and scope from the search Officers Murphy and Thompson subsequently conducted to search for the gun they believed Johnson possessed, but Brazzel would not necessarily have known this without having been told the difference. And no one testified that this difference was explained to her. Brazzel's "subjective belief that [she] had no choice but to comply with [the officers'] request to search" weighs in favor of finding her consent to be involuntary. *See Worley*, 193 F.3d at 386 (upholding the district court's finding that Defendant's statement, "'You've got the badge, I guess you can,' did not indicate consent to the search"). But even if Brazzel's consent was not voluntarily given, the search of her residence is still constitutional due to Johnson's status as a parolee.

**Johnson's Parolee Status**

The government points to Johnson's status as a parolee and the "Conditions of Supervision" form he signed notifying him he was "subject to warrantless searches." (*See* Gov't Exh. 4). The government characterizes this form as a waiver of rights, suggesting Johnson waived his right to be free from warrantless searches when he signed it. Johnson also characterizes this form as a waiver but argues the government has failed to demonstrate Officer Raynor explained the terms to Johnson and that the form is unclear as to what may be searched in relation to the parolee.

This, however, is not a matter of consent. *See United States v. Knights*, 534 U.S. 112, 118 (2001) (finding it unnecessary to "decide whether [Defendant's] acceptance of the search condition constituted consent in the *Schneckloth* sense of a complete waiver of his Fourth Amendment rights, . . . because . . . the search of [Defendant] was reasonable under our general Fourth Amendment approach of examining the totality of the circumstances, with the probation search condition being a salient circumstance") (internal quotation marks and citation omitted). "[T]he warrant and probable cause requirements generally do not apply to searches of parolees, probationers or their residences." *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008) (citing *Samson v. California*, 547 U.S. 843, 857

5

(2006)). Parolees do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *see also Samson*, 547 U.S. at 836 (upholding a state parole regulation requiring parolees to submit to a search "with or without a warrant and with or without cause").

Courts apply a two-step test when evaluating the search of a parolee or his residence. *United States v. Doxey*, 833 F.3d 692, 703 (6th Cir. 2016); *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003). "First, courts examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement." *Loney*, 331 F.3d at 520. If the statute or regulation satisfies the Fourth Amendment, the second step is to "analyze whether the facts of the search itself satisfy the regulation or statute at issue." *Id.*

The search in this case was authorized by Ohio Revised Code § 2967.131. (Gov't Exh. 4). That statute provides that while one is on parole, "authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, . . . or other real property . . . for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if the field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's . . . parole." O.R.C. § 2967.131(C). The Sixth Circuit has already found this statute to be constitutional. *Loney*, 331 F.3d at 521. Therefore, the propriety of the search now hinges on whether the search satisfied the requirements of § 2967.131(C). *See Loney*, 331 F.3d at 520.

The place searched was Brazzel's apartment, which everyone agrees was not Johnson's residence. Brazzel testified to dating Johnson off and on at the time of his arrest and allowing him to stay at her home two or three nights a week. During his interrogation, Johnson explained that just before being arrested he had showered at Brazzel's and that he kept shirts there for his use as

6

needed. (Gov't Exh. 3 at 8:29-9:13). Johnson was then arrested while still in Brazzel's home. Because Johnson had Brazzel's permission to "use, occupy, or possess" the premises, the search of Brazzel's apartment is permissible under § 2967.131(C).

Section 2967.131(C) requires parole officers to have "reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's . . . parole." O.R.C. § 2967.131(C). "Reasonable grounds," or reasonable suspicion, is "based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Here, the reasonable grounds standard is satisfied. Johnson's mother contacted Officer Raynor to report that Johnson had threatened to cause her bodily harm with a gun and that he had texted her a picture of a gun. Johnson's parole terms forbid him from possessing, purchasing, or owning a firearm. (Gov't Exh. 4). So the information reported by Johnson's mother gave Officer Raynor reasonable grounds to believe Johnson was violating the terms and conditions of his parole. *See* O.R.C. § 2967.131(C); *Payne*, 181 F.3d at 788. Thus, the search satisfied the requirements of § 2967.131(C).

Based on the foregoing, I find the warrantless search of Brazzel's residence permissible under the Fourth Amendment, and I deny Johnson's motion to suppress the evidence found in the search.

**Johnson's Confession**

Having found no Fourth Amendment violation with respect to the search of Brazzel's apartment, Johnson's subsequent confession cannot be suppressed as fruit of the poisonous tree. *See United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008); *Wong Sun v. United States*, 371 U.S. 471,

7

484-85 (1963). The remaining issue is whether Johnson's confession was voluntarily made. (Doc. No. 10 at 2).

Johnson claims his confession was involuntary, because Officer Murphy used the threat of Johnson never seeing his children again to secure the confession. (Doc. No. 10 at 1). "In order to determine whether a confession was voluntarily made, a court must evaluate the totality of the circumstances surrounding the interrogation to determine whether the defendant's 'will [was] overborne and his capacity for self-determination critically impaired.'" *Loza v. Mitchell*, 766 F.3d 466, 477 (6th Cir. 2014) (citing *Schneckloth*, 412 U.S. at 225-26).

A review of the recorded portion of the interrogation reveals that Officer Murphy did not use Johnson's children to coerce him into confessing. The recording opens with Officer Murphy asking Johnson basic background questions with respect to the conviction that led to him being on parole at the time of the arrest, where he had been staying since his release, where he hoped to be moving, and so on. (Gov't Exh. 3 at 00:03-2:02). From there Officer Murphy asked questions about Johnson's relationship with Brazzel and then about the marijuana and gun found at Brazzel's home. (*Id.* at 2:02-12:24). During this time, Johnson repeatedly denied having possession of the gun. Officer Murphy continued to press Johnson, talking about having the gun tested for the presence of DNA and telling Johnson that Brazzel told officers the gun was not hers. (*Id.*) Eventually, Johnson confessed, saying he was "willing to take all for it." (*Id.* at 12:24-:44).

After making that statement, Johnson talked about his daughter's presence at Brazzel's apartment at the time of the arrest. (*Id.* at 12:45-13:00). Johnson explained he had only had his daughter for a visit since the day before. (*Id.* at 13:00-:09) Officer Murphy asked if anyone would be able to pick her up, and Johnson became noticeably upset when he said he did not know if anyone could. (*Id.*). Officer Murphy said "ok, all right" and then made no further comment about Johnson's children on the recording.

8

At no point on the recording did Officer Murphy threaten Johnson with not being able to see his children.  After confessing, Johnson talked about his daughter.  And he was understandably upset at the thought of his daughter being left at Brazzel's with no one to pick her up.  But Officer Murphy made no attempt to capitalize on Johnson's emotions.  As such, I find Johnson's confession was not coerced and need not be suppressed.

## CONCLUSION

Accordingly, Johnson's motions to suppress his confession and the evidence discovered through the search of Brazzel's residence are denied.  (Doc. Nos. 10 & 11).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge